UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARCELLO MAYS,

        Petitioner,

  v.                                              Case No. 20-cv-1717-pp

UNITED STATES OF AMERICA,

        Respondent.

**ORDER DENYING AS MOOT PETITIONER'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3), DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 1), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE**

On November 16, 2020, the petitioner filed a motion to vacate, set aside or correct the sentence imposed in <u>United States v. Marcello Mays</u>, Case No. 17-cr-96 (E.D. Wis.). Dkt. No. 1. The motion asserts ineffective assistance of counsel. <u>Id.</u> at 4. On August 12, 2021, the petitioner filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 3. This order denies as moot the petitioner's motion to proceed without prepaying the filing fee and screens the petitioner's motion to vacate, set aside or correct the sentence

**I.    Petitioner's Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 3)**

On August 12, 2021, the petitioner filed a motion asking the court to allow him to proceed without prepaying a filing fee. Dkt. No. 3. Because there is

1

no filing fee for filing a motion to vacate, set aside, or correct a sentence under 28 U.S.C. §2255, the court will deny the motion as moot.

**II. Background**

    A.    <u>Underlying Case</u>

        1.    *Indictment*

On June 6, 2017, the grand jury returned an indictment against the petitioner, Kavanaugh Coleman, Joshua Brown, Alexander Jenkins, Mychal Sykes, Olajwan Veasy, Shadell Burks, Kendrick Davis, Omar Triggs, John Dismuke and Jeremy Crumb. Dkt. No. 1. Count One charged the petitioner, Kavanaugh Coleman, Joshua Brown, Alexander Jenkins, Mychal Sykes, Olajwan Veasy, Shadell Burks, Kendrick Davis and Omar Triggs with conspiracy to distribute controlled substances (heroin and cocaine), including a kilogram or more of a mixture and substance containing heroin, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A), 846 and 18 U.S.C. §2. <u>Id.</u> at 1-2. Count Two charged the petitioner with possessing two firearms after having been convicted of a felony in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2).

        2.    *Plea agreement*

On January 25, 2019, the government issued an information charging the petitioner with one count of conspiracy to distribute controlled substances—including heroin—in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(C), 846 and 18 U.S.C. §2. Dkt. No. 288. The same day, the petitioner (represented by Attorney Patrick Brennan) signed a plea agreement. Dkt. No. 287 at 13. The agreement stated that the petitioner was pleading to the count

in the information. Id. at ¶5. It indicated that the petitioner had read and fully understood the charges in the indictment and information and "the nature and elements of the crimes with which he ha[d] been charged," and that his attorney had fully explained "the terms and conditions of the plea agreement." Id. at ¶4. In the agreement, the petitioner acknowledged, understood and agreed that he was guilty of the offense charged in the information. Id. at ¶6. He admitted that facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Id. The agreement stated that the petitioner understood and agreed that the maximum term of imprisonment for the count charged in the information was twenty years in prison, a one million dollar fine and a lifetime term of supervised release; the agreement stated that he understood and agreed that the charge carried a mandatory minimum of three years of supervised release and a special assessment of $100. Id. at ¶7. The agreement stated that the petitioner acknowledged, understood and agreed that he had "discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney." Id. at ¶8.

The agreement also laid out the elements of the charge. Id. at ¶10. It said that the parties understood and agreed that "in order to sustain the charge of conspiracy to distribute heroin and cocaine," the government must prove beyond a reasonable doubt that (1) the conspiracy alleged in the information existed, and (2) the petitioner "knowingly and intentionally became a member of the conspiracy with the intent to further the conspiracy." Id. at ¶10. The

3

agreement confirmed that the petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with [the petitioner] to [the petitioner's] satisfaction." Id. at ¶13. The petitioner acknowledged and understood that the agreement did not "create any right to be sentenced within any particular sentence range, and that the court [might] impose a reasonable sentence above or below the guideline range." Id. at ¶15. The agreement reflected that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and [might] impose any sentence authorized by law up to the maximum penalties" set forth in the agreement. Id. at ¶24. The petitioner acknowledged, understood and agreed that under the terms of the agreement, he could not "move to withdraw the guilty plea solely as a result of the sentence imposed by the court." Id. at ¶25.

The agreement provided that if it "[was] revoked or if [the petitioner's] conviction ultimately [was] overturned, then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. at ¶36. Finally, the petitioner acknowledged, understood and agreed that he would "plead guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶37.

### 3. *Change-of-plea hearing*

On February 12, 2019, the court held a change-of-plea hearing. Dkt. No. 295. The petitioner appeared in person with Attorney Brennan. Id. at 1. The court's minutes reflect that the court placed the petitioner under oath, reviewed the plea agreement with him, questioned him and "recounted that Count One involved a maximum prison term of twenty years, a maximum fine of [$1,000,000], and a maximum of a life-term of supervised release." Id. The court found that the petitioner understood his trial rights, the penalties associated with the charges in the indictment, the possible civil ramifications of a conviction and the uncertainty of the court's ultimate sentence. Id. "The court also found that [the petitioner] entered the plea knowingly and voluntarily, without threats or promises." Id. The court accepted the petitioner's guilty plea and found him guilty of the offenses in the information. Id.

### 4. *Sentencing hearing*

On January 16, 2020, the court conducted the sentencing hearing. Dkt. No. 425. The petitioner again appeared in person with Attorney Brennan. Id. at 1. Attorney Brennan confirmed that he and the petitioner had reviewed the relevant sentencing documents; the government confirmed that it also had reviewed the sentencing documents. Id. "Counsel for the [petitioner] indicated that he had seen the court's text-only order and he wanted the court to know that the [petitioner] did not object to the probation office's determination that he qualified as a career offender." Id. The court explained that while the sentencing guidelines were advisory, the law required the court to begin its

5

sentencing analysis with those guidelines and consider their application to the factors in 18 U.S.C. §3553. Id. The court calculated a base offense level of 32 under U.S.S.G. §4B1.1(b)(2) and a 3-level reduction under §3E1.1(a) and (b) for timely acceptance of responsibility; this calculation resulted in an adjusted offense level of 29. Id. The court determined that the petitioner was a career offender; under §4B1.1, this increased his criminal history category to VI. Id. at 2. In criminal history category VI, the court found that an adjusted offense level of 29 resulted in an advisory sentencing range of 151 to 188 months. Neither party objected to the court's calculations. Id. at 1-2.

The government recommended that the court impose a sentence of 108 months, while the petitioner argued for a sentence of sixty months. Id. at 2. The court concluded that a below-guidelines sentence of 100 months of incarceration, followed by three years of supervised release, was sufficient but not more than necessary to address the §3553 factors. Id. The court ordered the petitioner to pay a special assessment of $100 but did not impose a fine. The court agreed to recommend that the Bureau of Prisons place the petitioner at DCI Oxford or in a facility as close as possible to the Eastern District of Wisconsin. Id. "The court advised [the petitioner] that he had a right to appeal, that he had a limited time in which to do so, and that he should discuss his appeal rights with his attorney." Id. The court entered judgment of January 28, 2020. Dkt. No. 426.

B.  Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255

Almost ten months later, the petitioner filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. Mays v. United States, Case No. 20-cv-1717 (E.D. Wis.), Dkt. No. 1. The motion asserts one ground for relief: that the petitioner "was Denied the Effective Assistance of Counsel During the Sentencing Hearing and as a Result of Counsel's Failure to Adequately Prepare and Investigate in Preparation for Sentencing." Id. at 4.

### III. Analysis

A.  Standard

In a §2255 proceeding, the court must first review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

B.  Ineffective Assistance of Counsel

1.  *Procedural Default*

The petitioner did not appeal the sentence the court imposed. See Mays, Case No. 17-cr-96. Normally, the failure to raise a claim on direct appeal prohibits the court from considering that claim in a §2255 motion. Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017) ("[a]ny claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted."). There is an exception, however, for claims of ineffective assistance of counsel, which may be brought for the first time in a §2255 motion. Massaro v. United States, 538 U.S. 500, 504 (2003); United States v. James, 635 F.3d 909, 916 (7th Cir. 2011).

The petitioner's motion asserts ineffective assistance of counsel, which is cognizable for §2255 relief and not subject to the exhaustion requirement. The §2255 motion also appears timely. Generally, the Antiterrorism and Effective Death Penalty Act of 1996 imposes a requirement that a petitioner file a motion for collateral review within one year of his conviction becoming "final." 28 U.S.C. §2255(f)(1). The court entered judgment on January 28, 2020; the court received the petitioner's motion on November 16, 2020.

2.  *Applicable law*

"Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, [the petitioner] must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in

8

prejudice." United States v. Berg, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing Strickland, 466 U.S. at 687). The first prong of the Strickland test requires a petitioner to identify specific acts or omissions of his counsel; the court then considers whether, in light of all of the circumstances, his attorney's performance fell outside the range of "professionally competent assistance." Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009) (citing Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003)). The court's review of an attorney's performance must be "highly deferential," and the court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; Wyatt, 574 F.3d at 458. The prejudice prong requires a petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." Adams v. Bertrand, 452 F.3d 428, 435 (7th Cir. 2006) (citing Strickland, 466 U.S. at 694).

Strickland's performance prong applies to sentencing counsel and trial counsel in the same way: the petitioner must show that counsel's performance fell below an objective standard of reasonableness. Resnick v. United States, 7 F.4th 611, 625 (7th Cir. 2021) (citing Griffin v. Pierce, 622 F.3d 831, 843-44 (7th Cir. 2010)). To establish prejudice from sentencing counsel's allegedly defective performance, a petitioner must show a reasonable probability that he

9

would have received a different sentence but for counsel's performance. Id. (quoting Griffin, 622 F.3d at 844).

### 3. *Petitioner's ineffective assistance of counsel claim*

The petitioner contends that "[c]ounsel was constitutionally deficient for failing to seek credit for time [the petitioner] served on pre-trial services supervision as a downward variance." Dkt. No. 2 at 7. He says that he "was released to pre-trial services supervision on October 12, 2017," and remained on that supervision until he reported to serve his sentence. Id. at 7-8 (footnote omitted). The petitioner concludes that a "period of 856 days is what minimally competent counsel was required to seek as a downward variance." Id. at 8 (footnote omitted).

The petitioner argues that sentencing counsel was deficient for failing to request a downward variance "for this period due to its length—and thus its potential impact on the amount of prison time [the petitioner] would likely serve—and the fact that any reasonable attorney would know that there was no other means for [the petitioner] to obtain credit for this time." Id. at 9. The petitioner argues that his attorney should have known that his pretrial supervision would not have qualified for credit under 18 U.S.C. §3585. Id. at 9-10. He asserts that it is "equally clear" that this court had discretion to grant a downward variance based on the petitioner's pretrial release. Id. at 10-11 (citing Untied States v. Pietkiewicz, 712 F.3d 1057, 1060 (7th Cir. 2013))[1]. The

---

[1] Pietkiewicz has no bearing on the petitioner's case. It involved a defendant who sought a downward variance for a term of incarceration that had been discharged. The Seventh Circuit vacated and remanded because the district

10

petitioner concludes that "[u]nder these circumstances, no reasonable attorney would have failed to move this Honorable Court to grant [the petitioner] a downward variance to reduce the otherwise applicable sentence by the time he had served on pre-trial supervision." Id. at 11.

As for prejudice, the petitioner concludes that had counsel moved for the variance, there is a "reasonable probability" that this court would have granted that variance. Id. He asserts that the length of his supervision was substantial, "his liberty was restrained beyond that of anyone in the general public, and he presented positive post-offense conduct and offender characteristics, sufficient to warrant a variance sentence." Id. He states that had the court granted the variance, it "would have reduced the sentence by more than 850 days." Id. Because the court imposed a below-guidelines sentence and because the court "was concerned that [the petitioner] also receive any credit for time served," the petitioner concludes that there is a reasonable probability that had counsel moved for a downward variance based on the petitioner's pretrial supervision, the court would have reduced the petitioner's sentence and granted "full credit for each and every day which [the petitioner] served on pre-trial supervision." Id. at 13-14.

The petitioner's claim has no merit. Attorney Brennan was not ineffective for failing to move for a downward variance based on the amount of time the petitioner spent on pretrial release. 18 U.S.C. §3585(b) provides that

---

court did not explain why it denied the motion for a variance. The plaintiff here has no discharged term of imprisonment and the court did not deny a motion for a variance without explaining why.

11

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

As the petitioner concedes, pretrial release is not "official detention" for purposes of sentencing credit under §3585(b). "[T]here can be no doubt after the Supreme Court's decision in *Reno v. Koray*, 515 U.S. 50, 57, 61 n.4 . . . (1995), that a defendant who is properly admitted to bail is not in 'detention' within the meaning of § 3585(b), no matter how restrictive the conditions." United States v. Gordon, 130 Fed. App'x 24, 25 (7th Cir. 2005). In Koray, the Supreme Court held that "time . . . spent at the Volunteers of America community treatment center while 'released' on bail pursuant to the Bail Reform Act of 1984 was not 'official detention' within the meaning of 18 U.S.C. § 3585(b)." Koray, 515 U.S. at 65. So the Bureau of Prisons could not credit the petitioner for the time he spent out on bond prior to sentencing.

The petitioner argues that his attorney's performance was deficient because his attorney did not ask the court to vary twenty-eight or so months below the guidelines to give the petitioner day-for-day credit for every day that he was on pretrial supervision. This argument ignores two realities. First, the court *did* vary below the guidelines. It gave the petitioner a sentence *fifty-one* months below the low end of the guideline range—four and a quarter years

12

below the low end. Second, the petitioner's attorney *did* ask the court to grant the petitioner a downward variance; defense counsel asked the court to give the petitioner a sentence of sixty months—*ninety-one months*, or seven and a half years, below the low-end of the guideline range. That is far more than the twenty-eight or so months the petitioner was on pretrial release. The petitioner appears to be under the impression that if defense counsel had said, "Judge, please give my client sixty months because he was out on supervised release for a very long time," as opposed to the arguments that defense counsel actually made on the day of sentencing, this court would have (a) granted the petitioner the fifty-one-month variance it gave him at sentencing, then (b) granted him another twenty-eight-month variance for being on supervised release for a long time.

The petitioner has not demonstrated ineffective assistance of counsel. Even if Attorney Brennen was ineffective in asking this court to give the petitioner credit against his sentence for every day he spent on pretrial release—and he was not—the petitioner cannot demonstrate that but for Attorney Brennan's failure to make that argument, his sentence would have been different. This court would not have given the petitioner day-for-day credit for the time he spent on pretrial release. It never has given *any* defendant day-for-day credit for time on pretrial release and it has had defendants who were on release longer than the petitioner.

The petitioner neglects to mention that while he was on pretrial release, he twice tested positive for controlled substances and once left the district

13

without the permission of his supervising probation officer. Dkt. No. 357 at ¶¶5, 6. The petitioner also neglects to mention that he was involved in a conspiracy that moved a significant amount of drugs and that he qualified as a career offender. Given those facts, the sentence the petitioner received was far less than what it could have been. If the petitioner's attorney had asked the court to give the petitioner day-for-day credit for the time he was on pretrial release, the court would have declined.

The court will deny the motion and dismiss the case.

## IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the §2255 motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Peterson v. Douma, 751 F.3d 524, 528 (7th Cir. 2014) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). The court declines to issue a certificate of appealability, because no reasonable jurist could debate that the petitioner's claims do not warrant relief under 28 U.S.C. §2255.

## V. Conclusion

The court **DENIES AS MOOT** the petitioner's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DENIES** the petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. §2255. Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 25th day of April, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**